IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 7:21-CR-008-O |
| RICKY DALE HOWARD (01) | |

### GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE INTRINSIC EVIDENCE REGARDING THE MISSING PERSON INVESTIGATION AND REQUEST FOR PRETRIAL RULING

The government files notice of its intent to introduce evidence of MV1's status as a missing person and the related police investigation, which are relevant to explain: (1) why MV1 is not available to testify at trial and identify himself and the defendant in the images depicted in Count One; (2) how the police came to be in possession of the two computers that contain the images of child pornography; and (3) the delay in the prosecution.

**I.  Factual Background**

The defendant is charged by indictment with four counts related to the sexual exploitation of children.  Count One alleges sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(a) and (e).  Count Two alleges receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1).  Count Three alleges a violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2), possession of child pornography.  Count Four alleges a violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2), accessing child pornography.

On March 15, 2015, MV1, a high school senior, turned 18 years old. On Wednesday, April 1, 2015, MV1's mother, T.D., a resident of Nocona, Texas, reported MV1 missing to the Nocona Police Department (NPD). After opening a missing person investigation on MV1, NPD officers spoke with everyone who they believed had contact with MV1 at or near the time of his disappearance.

At the initial stage of the investigation, NPD Chief Kent Holcomb naturally spoke with Defendant Ricky Howard because he knew that Howard had had contact with MV1 close to the time MV1 disappeared. Howard spoke with Chief Holcomb and provided a written statement. Howard said that MV1 contacted him on Thursday, March 26, 2015, because MV1's truck would not start. At the time, MV1 lived in an apartment in the Metroplex with his sister C.D. Howard told MV1 that he would travel to MV1's residence to fix the truck the following day. Howard did so but was unable to fix it. He then arranged for the truck to be towed to Nocona and told MV1 that he could drive Howard's 2000 pickup truck while MV1's truck was being repaired. MV1 rode back to Nocona with the tow truck driver on Friday, March 27th, retrieved Howard's truck, and drove to his mother's house in Nocona after his arrival.

During the weekend, MV1 was supposed to work for Howard servicing oil pumps to earn rent money, before returning to the Metroplex for school on Monday. Howard told police that he spoke with MV1 about work on Sunday and Monday. On Monday, March 30, 2015, Howard told MV1 that he would have work for MV1 to perform on Tuesday. Per Howard, however, MV1 said he was leaving for Oklahoma to do another job and that Howard should give MV1's check to his mother. Howard took a check to

**Government's Notice of Intent to Introduce Intrinsic Evidence - Page 2**

MV1's mother's house on Monday night. MV1's phone was last used at 4:49 p.m. on Monday, March 30th, to receive a call from Howard.

In speaking with Howard on April 8, 2015, Howard told Chief Holcomb that the camper trailer that Howard kept at his farm had items missing from it. Howard said he placed a clock radio with a hidden camera inside the camper trailer, but it was missing. Howard stated he suspected MV1 of stealing the clock radio.

On April 11, 2015, Howard met Chief Holcomb at Howard's parents' property, located just outside of Nocona. While there, Chief Holcomb observed a burn pit, which contained a burned Dell computer tower, a burned Acer computer tower, a third burned computer tower, and what appeared to be a burned cellphone motherboard. Howard explained that the computers belonged to his deceased parents and that he was cleaning things out. From there, Chief Holcomb and Howard went to the Howard farm in Nocona. Howard showed Chief Holcomb the camper trailer that he kept on the property.

According to MV1's mother, MV1's family had been close to Howard's family as MV1 grew up, even going on trips together prior to MV1's parents' separation in 2008. MV1 and Howard's youngest son were best friends. MV1 and his older brother had worked for Howard starting around middle school at Howard's various properties tending to oil pumps, mowing, helping with cattle, and other ranch/farm hand type work. With respect to the days before MV1's disappearance, MV1's mother told the police that MV1 had been in and out of her house the Saturday and Sunday before he went missing. On Monday afternoon, he left his mother's to go to a friend's house. That was the last time MV1's family heard from him or saw him.

Two years later, on April 25, 2017, MV1's mother was cleaning out a storage space above the shower in her home. She found a Tractor Supply bag hidden in the back of the cabinet. The bag contained a small handheld tape recorder with a recording of Howard asking himself polygraph questions pertaining to sexual interest in boys, baseball schedules with polygraph questions on the back in Howard's handwriting, a professional packet on how polygraphs work, and a clock radio with a hidden camera. T.D. called the Montague County Sheriff's Office, who subsequently photographed the items and collected them as evidence.

Several months later, in October, the Montague County Sheriff's Office asked Investigator Kevin Benton to review and reopen the missing person file pertaining to MV1. Benton reviewed the file, including Howard's statements, and learned about MV1's connection to Howard. The reference to the burn pit in the reports stood out to Investigator Benton. As a result, Benton interviewed K.H., Howard's ex-wife, and inquired about computers belonging to Howard. While K.H. denied knowledge of the burned computers, she provided Benton with an old Gateway computer, which contained a Western Digital hard drive, (collectively referred to as the "Gateway computer"), and which had been stored and unused in a closet since her divorce from Howard over two years before. She gave Benton consent to search it. Benton took the computer to the Montague County Sheriff's Office where it was logged into property.

Investigator Benton was aware that in the early 2000's, Ricky Howard had been investigated for bank fraud, and that during the course of that investigation, multiple allegations that Howard had sexually abused minor boys surfaced. Benton was also

aware of the polygraph recording and questions found by MV1's mother.  Benton learned that as part of his federal sentence, Howard had been required to attend sex offender treatment as a condition of supervised release.  Pursuant to this Court's order and a subpoena, Benton obtained the sex offender therapy records for Ricky Howard, covering the period from November 2, 2009, until October 30, 2012.  The Psychotherapy Services & Yokefellows ("PSY") records revealed that Howard expressed an interest in minor boys, alluded to having sexually abused two of the boys who previously outcried, expressed an interest in pornography, and admitted to getting sexually aroused when wrestling with a 14-year-old "nephew."  During the time Howard was attending those sessions, MV1 would have been between 12 and 15 years old, which corresponds to the date range in Count One.  The description of his "nephew," moreover, was strikingly similar to that of MV1.  Benton then drafted and obtained a search warrant for the Gateway computer, which he took to the FBI's North Texas Regional Computer Forensic Lab ("RCFL") on January 31, 2018, for analysis.

The RCFL forensic analyst was able to recover photographs and images from the Gateway computer that had previously been deleted.  Specifically, the examiner found over 100 images of child pornography, two of which are described in Count Four of the Indictment.  The forensic analyst also found several pictures of MV1, all shirtless.  MV1's mother identified him in several of the non-pornographic images.  The only pornographic image of MV1 on the Gateway computer shows MV1 lying on his back on

**Government's Notice of Intent to Introduce Intrinsic Evidence - Page 5**

a couch with his penis exposed in Howard's hand, while Howard's pants and underwear are also pulled down partially.  This photograph is the subject of Count One of the Indictment.

Further investigation revealed that in or about November 2015, Howard gave his daughter, J.K., an Acer laptop computer, so that J.K. could take over the financials for Howard Operating Company and JCT Cattle Company.  In September 2018, J.K., who lives in Tennessee provided the laptop to Benton by handing it off to various family members.  Benton subsequently obtained a search warrant and had the RCFL process the Acer.

The forensic analyst located additional images of child pornography described in Counts Two and Three of the Indictment.  Additionally, four images of MV1 on a couch with Ricky Howard were located.  The images appear to be part of a sequential series.  Two of the images are described in Count One of the Indictment.  The other two images depict MV1 on the couch shirtless.  In one, Howard touches MV1's abdomen with his hand.  In the other, Howard's hand is in MV1's shorts.  Benton identified MV1 and Howard in the images.  Redacted versions of the images were shown to MV1's father, MV1's mother, MV1's sister C.D., the local physician, Howard's son C.H., Howard's son T.H., and K.H.  Each person indicated that it was MV1 and Howard in the images.  Moreover, C.D., C.H., T.H., and K.H. each stated that the photographs appear to have been taken inside the Howard family camper.  Like the images on the Gateway, these too had been deleted and were in unallocated space.

MV1, who would be 24 years old at the time of trial remains missing.  He is not available to testify about the defendant's alleged sexual abuse of him or to identify the photographs of himself, Howard, or the camper that are the subject of Count One.

## I.     Legal Authority

The government seeks to introduce evidence that MV1 was reported missing in 2015, and remains so, and that the missing person case is unsolved.  The evidence is relevant and necessary to explain why: (1) MV1 is not available to testify at trial and to identify himself, the defendant, and the camper in the images depicted in Count One; (2) how and why the police came to be in possession of the two computers that contain the images of child pornography; and (3) the delay in the prosecution of the child pornography charges.

The fact that MV1 is missing, moreover, will inevitably be the subject of voir dire questions because it was the subject of media reports.  Indeed, the defense has asked for a change of venue on that basis.  (Dkt. 25.)  MV1's status as a missing person explains the course of the investigation and is necessary to complete the story of the crime. A pretrial ruling, moreover, is essential for the government to effectively prepare its case presentation and witnesses for trial, present its opening statement, efficiently present testimony, and for the parties to conduct voir dire.

Rulings on the admissibility of evidence are entrusted to the sound discretion of the trial court.  *United States v. Morgan*, 117 F.3d 849, 861 (5th Cir. 1997) (citing *United States v. Clements*, 73 F.3d 1330, 34 (5th Cir 1996) ("criminal activity other than the charged offense is not considered extrinsic with the proscription of Rule 404(b) of the

Federal Rules of Evidence if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense,. . . if it was inextricably intertwined with the evidence regarding the charged offense, . . . or if it is necessary to complete the story of the crime of the trial . . . .")(internal citations omitted). When the investigation into another crime is necessary to explain an agent's actions and is reasonably necessary to complete the story of the crime, it is not extrinsic evidence. *See United States v. Weeks*, 716 F.2d 830 (11th Cir. 1983) (the investigation into stolen vehicles explained the agent's presence with Weeks and his associates and their animosity towards the agent, was inextricably linked to the charged offense of assault, and was reasonably necessary to complete the story of the crime; therefore, it was not extrinsic under Rule 404(b)) (citing *United States v. Bloom*, 538 F.2d 704, 707 (5th Cir.1976); cert. denied, 429 U.S. 1074(1977); *Nunez v. United States*, 370 F.2d 538, 539 (5th Cir.1967)).

    Here, the crimes alleged in the indictment occurred over a decade ago. They came to light only because Investigator Benton took a second look at a cold case, *i.e.*, the 2015 missing person investigation of MV1.[1] The details of the investigation, especially the computer burn pit, explain why Benton endeavored to locate other computers that had been in the defendant's possession during the relevant time period. MV1's status as

---

[1] Though Howard has been a person of interest in MV1's disappearance, and certain of his statements and actions appear suspicious, the police have yet to establish that a crime was committed in connection with MV1's disappearance, let alone that Howard committed it.

missing likewise explains why he is unavailable to testify and sheds light on the delay in the prosecution of the charged counts.

Additionally, during the missing person investigation, Howard curiously told the police that he believed MV1 stole his clock radio and hidden camera from the camper, which appears to be the same camper depicted in Count One. MV1's mother later found in her home a clock radio and hidden camera along with papers and recordings that belonged to Howard and corroborate Howard's sexual abuse of MV1 and his sexual interest in young adolescent boys. This evidence circumstantially links MV1 and Howard, is probative of how he produced the series of pictures of MV1, and explains the presence of these and other images on Howard's computers in unallocated space. The deleted photographs of MV1 and the other deleted images of child pornography and exploitation, along with the computer burn pit and efforts to beat the polygraphs, all point to Howard's knowing possession, receipt and production of child pornography, as well as his desire to conceal his crimes. None of these facts would have come to light absent the missing person investigation.

Given the probative value of the evidence, its exclusion would be unfairly prejudicial to the government's case. Any concerns the defendant has about being implicated in a crime related to MV1's disappearance can be addressed in a cautionary instruction. *See Bloom*, 538 F.2d at 707. To guard against unfair prejudice, and with the defendant's input and consent, the Court should give an instruction that makes clear that the defendant is not on trial for the missing person case and has not been charged in connection with the matter. Rather, the evidence is admitted for the very limited purpose

of showing that MV1 is unavailable to the parties at trial as well as to explain the timing and course of events in the investigation. The Court should further instruct the jury that it is not permitted to use the evidence to draw any conclusions related to MV1's disappearance, should the defense request such an instruction.

Because the evidence is not extraneous, and the issue is unavoidable during voir dire, the government respectfully requests that the Court permit the government to introduce evidence of the missing person investigation, and further requests that the Court rule on its admissibility pretrial to ensure efficiency in the trial proceedings.

Respectfully submitted,

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

*s/ Nancy E. Larson*
NANCY E. LARSON
Assistant United States Attorney
D.C. Bar No. 430780
801 Cherry Street, Unit #4
Burnett Plaza, Suite 1700
Fort Worth, Texas 76102-6897
Telephone: 817-252-5200
E-mail: nancy.larson@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on June 9, 2021, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means: Dustin Nimz.

      *s/ Nancy E. Larson*
      NANCY E. LARSON
      Assistant United States Attorney