IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Criminal Action No. 7:21-cr-00008-O |
| | § | |
| RICKY DALE HOWARD, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are the Government's Notice of Intent to Use Other Acts Evidence Under Federal Rules of Evidence 413, 414, and 404(b) (ECF No. 28), filed June 8, 2021; Response to Government's Notice (ECF No. 57-1), filed July 10, 2021; and the Government's Reply (ECF No. 88-1), filed July 16, 2021. The Government's Notice discloses eight forms of evidence and two prior convictions that it seeks to admit at trial.[1] Not. 2–3, ECF No. 28; *see* Superseding Indictment, ECF No. 44 (charging Defendant with (1) Sexual Exploitation of a Child, (2) Receipt of Child Pornography, (3) Possession of Child Pornography, and (4) Accessing Child Pornography). Defendant opposes the admission of all eight. Resp. 1–13, ECF No. 57-1. The Court addresses each in turn.

**I.  Legal Standard**

  **A.  Federal Rules of Evidence 401, 402, and 404(b)**

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by [the Federal Rules of Evidence], or by other rules

---

[1] In its reply, the Government retracted its intent to admit the prior convictions. Reply, ECF No. 88-1 ("The government considers Howard's objection to be such a request, and has redacted Howard's Bank Fraud conviction from the sex offender treatment records.").

prescribed by the Supreme Court pursuant to statutory authority." Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

Rule 404(b) limits Rule 402. Federal Rule of Evidence 404(b) prohibits the use of "[e]vidence of any other crime, wrong, or act" to prove "a person's character in order to show that on a particular occasion the person acted in accordance with the character." But it permits the evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The purpose of Rule 404(b) is to "guard against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense." *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007). Thus, Rule 404(b) is only implicated when the offered evidence is extrinsic; evidence intrinsic to the charged offense does not implicate the rule. *See United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999). "Evidence of an act is intrinsic when it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode . . .." *United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994).

"The proper test to apply in deciding the admissibility of 'similar acts' or 'other acts' evidence depends upon whether the evidence in question is 'intrinsic' or 'extrinsic' evidence." *United States v. Williams,* 900 F.2d 823, 825 (5th Cir. 1990). "Evidence of acts other than conduct related to the offense is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Yi*, 460 F.3d 623, 632 (5th Cir. 2006). Such evidence is admissible "to complete the story of the crime by proving the

immediate context of events in time and place." *United States v. Taylor,* 210 F.3d 311, 317 (5th Cir. 2000).

### B. Federal Rule of Evidence 414[2]

"In cases involving the molestation of children, Rule 414 permits the admission of evidence of other acts constituting child molestation when this evidence has 'bearing on any matter to which it is relevant.'" *United States v. Moore*, 425 F. App'x 347, 351–52 (5th Cir. 2011) (quoting Fed. R. Evid. 414(a)). Evidence of similar crimes in child molestation cases is admissible; Child molestation cases constitute "any conduct proscribed by chapter 110 of title 18, United States Code;" or, "contact between any part of the defendant's body or an object and the genitals or anus of a child." Fed. R. Evid. 414(d)(2)–(3). "Child molestation" also includes contact between any part of the defendant's body—or an object-and a child's genitals or anus." *See* Fed. R. Evid. 414(d)(2)(B); Fed. R. Evid. 414(d). Other courts have admitted evidence of "child molestation" under Rule 414 in child pornography trials. *See, e.g., United States v. Moore*, 425 F. App'x. 347, 352 (5th Cir. 2011); *United States v. Woods*, 684 F.3d 1045, 1064 (11th Cir. 2012).

### C. Federal Rule of Evidence 403

"Even intrinsic evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Barnes*, 803 F.3d 209, 220–21 (5th Cir. 2015) (citing Fed. R. Evid. 403). "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Pace*, 10 F.3d 1106, 1115–16 (5th Cir. 1993) (quoting *United*

---

[2] Both Rules 413 and 414 provide exceptions to the general prohibition on character evidence in cases involving sexual assault and child molestation, respectively, and, due to their similarity, either may apply here. *See United States v. Guidry*, 456 F.3d 493, 501 n.1 (5th Cir. 2006). Because the prior acts involve allegations sexual abuse of minors who were presumably children under fourteen at the time, the Court deems Rule 414 most applicable in this instant.

3

*States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)) (internal quotation marks omitted) (emphasis in original).

## II.   Government's Rules 413, 414, and 404(b) Notice

### A.  Non-Pornographic Images of MV1

According to the Government's Notice, it intends to introduce at trial non-pornographic photos and videos of MV1 taken from December 2009 to August 2012, some of which were located on the devices listed in the indictment and some show MV1 without his shirt on. *See* Not. 2, ¶ 1, ECF No. 28. The Government intends to "call witnesses who will confirm that Howard was seen secretly photographing MV1" and will seek to introduce the evidence "to complete the story regarding [Defendant]'s relationship with MV1" and to "confirm the age range of [Defendant]'s sexual interest, which coincides with the age range [and exploitive contents] of the other child pornography found on the computers." *Id.* (citing Fed. R. Evid. 401, 402). Specifically, "some [of the images] contain metadata" establishing that they "were taken with [Defendant]'s camera"—a Konica Minolta Digital Camera labeled "RH camera" on the Gateway computer. *Id.* And some of the images "link [Defendant] and MV1 to the travel camper that is depicted in the images charged in Count One." *Id.* For each purpose for admitting the evidence, Defendant contends that the evidence is not necessary and prejudicial because other evidence could prove the same. *See* Resp. 2–3, ECF No. 57-1 (*e.g.*, a birth record to prove age of MV1).

The Court concludes that the non-pornographic images of MV1 are intrinsic to the production of child pornography, alleged in Count One, by linking Defendant, MV1, Defendant's camera, and the travel camper depicted in Count 1, which requires the Government to prove that Defendant employed, used, persuaded or coerced the victim to take part in sexually explicit conduct for the purpose of producing one or more visual depictions of such conduct. In this way,

under the Government's theory of the case, the evidence also has both temporal and geographic relevance so as to "provide the immediate context of events in time and place" to Defendant's coercion, persuasion, and grooming of the victim. *See Taylor*, 210 F.3d at 317. The images and relating evidence, with the proper foundation, are "inextricably intertwined" with and a "necessary preliminary" to the ultimate production of child pornography with MV1 as the subject, with the travel camper as the place, with the RH Camera as the means of production, and with the Gateway and Acer computers serving as the means of saving the images, as alleged in Count One. *See Yi*, 460 F.3d at 632. Accordingly, the evidence is admissible with a proper limiting instruction and insofar as it is not cumulative or violative of Rule 403 in the context of trial.[3]

### B. Non-Charged Child Pornography Images

According to the Government's Notice, it intends to introduce at trial "additional images of child pornography and child exploitation which were found on the devices in the indictment[.]" Not. 2, ¶ 2, ECF No. 28. The Government contends that "this evidence is intrinsic, not extrinsic to the offenses charged[,] but if the Court finds them to be extrinsic, "they show Howard's intent when accessing child pornography on the internet, in receiving child pornography from the internet, and producing the child pornography in count one" and "Howard's knowledge that the images he was viewing, downloading, and possessing were images of child pornography." Reply 6, ECF No. 88-1 (citing Fed. R. Evid. 402, 404(b), 403).

Defendant argues that "the non-charged child pornography images likewise lack the critical metadata that would show dates associated with those images, and thus are of no additional evidentiary value in establishing the timing and association with the charged images." Resp. 5,

---

[3] Even if the evidence were extrinsic, it would be admissible to prove both knowledge and identity—especially because the Government plans to present evidence that these photos were taken with a camera owned by Defendant and that camera was the same used to produce the images in Count One. *See* Fed. R. Evid. 404(b).

5

ECF No. 57-1. Defendant also maintains that "[t]he Government is attempting to use extraneous uncharged child pornography, for which there is no greater connection to the defendant then the charged images"—"improper character evidence." *Id.* at 6.

Here, the uncharged images present similar depictions as those in the charged images of prepubescent and pubescent males. To the extent the Government contends these images are admissible under the general relevance standard on the basis of volume along, the Court declines to admit the evidence on these grounds, the Government only arguing without any citation to supporting case law that the sheer volume of uncharged images supports an inference of knowledge. *See* Fed. R. Evid. 402; *see, e.g., United States v. Edington*, No. 2:10-CR-335, 2011 WL 13130880, at *5 (S.D. Ohio Apr. 12, 2011) (citing *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995) (declining to admit under Rule 402 uncharged images where "[t]he Government ha[d] not alleged, for example, that the uncharged images were obtained at the same time, from the same source, or under the same circumstances as the charged conduct."). Thus, the admissibility of the evidence of the uncharged images should be evaluated under Federal Rule of Evidence 404(b).

According to Defendant's jail calls, he intends to contest his identity as the person who committed the charged offenses at trial. *See* Not. 7, ECF No. 28. Because identity will be central, the Court finds the uncharged child pornography, images of child exploitation, file names, and directory folders admissible as relevant to all counts to show Defendant's common plan, knowledge, intent, and absence of mistake. *See* Fed. R. Evid. 404(b). The other images, file names and directories, with a proper foundation, show a common plan on both relevant computers—the Acer and the Gateway—of accessing, viewing, downloading, and deleting images. A reasonable jury could draw from this evidence that the charged images were not accessed, received, or

possessed by accident or mistake. *See, e.g, United States v. Warner*, No. CRIM. 12-0107, 2014 WL 122820, at *3 (W.D. Pa. Jan. 13, 2014) (admitting uncharged images under Rule 404(b) for the same reasons); *see United States v. Naidoo*, 995 F.3d 367, 378 (5th Cir. 2021) ("this court has repeatedly held, even legal pornographic materials may 'show that the possession of the [illegal] photographs was unlikely an accident.'"). At this juncture, the evidence is admissible with a proper limiting instruction and insofar as it is not cumulative.[4]

### C. Filesharing program "Freenet," Downloads, Gateway Computer Searches, and Magazines and Webpages

According to the Government's Notice, it intends to introduce at trial (1) evidence of the file sharing program "Freenet" and its downloads and sites on the Acer and Gateway computers; (2) evidence of Defendant's searches on the Gateway computer in InPrivate Browsing for "12 year old sex drive" and "really muscular child" and other similar terms; and (3) evidence that Defendant viewed magazines and went to webpages providing access to child exploitation and child pornography on the Gateway computer. *See* Not. 2, ¶¶ 3–5, ECF No. 28. The Government contends that these are inextricably intertwined because discussion of the means—the programs, searches, and webpages—are "[i]nherent in explaining how [Defendant] came to receive, possess and access with intent to view images . . ..." Reply 8, ECF No. 88-1.

Defendant contends that "[t]he purported connection is purely speculative." Resp. 6, ECF No. 57-1. For the Freenet program, "since there is no nexus established between the program and only speculation as to how it could be associated with the charged offenses, it cannot then be the basis to prove the specified 404(b) exceptions." *Id.* at 7. For the Gateway searches, Defendant

---

[4] In light of the volume of images, the Government will be limited to a reasonable number to show Defendant's common plan, knowledge, intent, and absence of mistake without admitting cumulative uncharged images so as to present a danger of unfair prejudice substantially outweighing their probative value. *See* Fed. R. Evid. 403.

argues "There is no evidence before the court as to the length of time - years - between when [Defendant] may have had access to those computers and when the materials described in this paragraph were discovered." *Id.* at 7. For the magazines and webpages, Defendant argues "evidence regarding what was found on the Gateway and Acer computers is not admissible until the Government has established the conditional evidence required to get into these matters." *Id.*

At the outset, the Court finds the Eighth Circuit's description of Freenet and its functionality instructive to its analysis:

> Freenet is free to use and publicly available to anyone willing to dedicate a portion of their computer's hard drive to the network. Unlike other file sharing systems, Freenet does not give a user immediate access to intact files for downloading. Rather, to allow for anonymous retrieval of files from the network, Freenet breaks down each uploaded file into "blocks." These blocks, or portions of a file, are then distributed over numerous computers that are running Freenet (computers running Freenet are sometimes called "nodes"). No single node stores all of the blocks for a single file, and all blocks are encrypted—meaning that a user whose computer passively stores blocks does not know what the blocks contain.
>
> Someone seeking a particular file on Freenet can use a publicly available "key" to retrieve the file. This "requester" uses the key to ask other Freenet nodes for the blocks he or she needs to make up the desired file. No user is connected to all of the nodes on Freenet. Rather, users are connected to just a subset of all Freenet nodes, called the user's "peers." Thus, a requester sends the blocks request to only his or her peers. When a peer receives the request, the peer's computer provides any of the requested blocks in its possession and then passes, or "relays," the request to *its own* peers on behalf of the original requester. A peer that relays a request is called a "relayer."
>
> As a result of this decentralized configuration, a computer running Freenet can receive two types of requests: (1) requests from the original requester—the user who located the key and is seeking to obtain all of the blocks for the desired file; and (2) requests from a relayer—another computer on Freenet that simply relays an original request for blocks on to its peers. For purposes of this case, there is an important difference between a requester and a relayer. Requesters know what file they are requesting; relayers do not know what blocks have been requested from their computers or what file those blocks are part of. Relayers do not even know whether their computers have relayed an original request for blocks to their peers.
>
> A key feature of Freenet is that requesters and relayers are indistinguishable to an ordinary user of the network. A user who receives a request does not know whether

> it came from an original requester or a relayer. Law enforcement, however, can determine which Freenet users request which files by using a statistical algorithm developed and validated by Dr. Brian Levine, an expert in networks and security at the University of Massachusetts Amherst. The algorithm allows law enforcement to distinguish between requests sent from an original requester and requests forwarded by a relayer.

*United States v. Dickerman*, 954 F.3d 1060, 1063 (8th Cir. 2020).

In this case, the evidence of Freenet, Defendant's Gateway computer searches, and Defendants viewership on the Gateway computer of magazines and webpages providing access to child pornography are all admissible as inextricably intertwined with all counts. Fed. R. Evid. 402. Because Freenet registry keys allow the Government to time stamp the relevant access times and are common across both computers and because some of those keys "still lead to live child pornography pages[,]" *see* Reply 8, ECF No. 88-1, under the Government's theory of the case, the evidence here "provide[s] the immediate context of events in time and place" of Defendant's access, receipt, and possession of the charged images. *See Taylor*, 210 F.3d at 317. The evidence is "inextricably intertwined" with and a "necessary preliminary" to the ultimate receipt and possession of the child pornography at the times alleged in the indictment. *See Yi*, 460 F.3d at 632. Without it, the story is incomplete. Thus, the evidence of the Freenet application, the searches, and search results—i.e. webpages and magazines—is intrinsic to the charged crimes and relevant to all counts. Accordingly, the evidence is admissible with any proper limiting instruction and insofar as it is not cumulative.

### D. Polygraph-related Information

According to the Government's Notice, it intends to introduce at trial "[e]vidence that the defendant gathered and recorded information regarding polygraphs and how to pass them while in sex offender treatment[.]" *See* Not. 2, ¶ 6, ECF No. 28. The parties separately briefed the issue of the polygraph-related information. *See* Defendant's Mot. in Limine Regarding Polygraphs, ECF

9

No. 83; the Government's Resp., ECF No. 86. Defendant requests that all witnesses "refrain from mentioning directly or indirectly . . . polygraphs as it relates to [Defendant] . . .." Def.'s Mot. 1, ECF No. 83. The Government maintains that it does not seek "to admit any polygraph evidence for the purpose of proving the results of any polygraph." Gov.'s Resp. 1, ECF No. 86. Instead, the Government seeks to admit "evidence that, at the same time the defendant was engaging in the conduct described in the Superseding Indictment, he also (1) was undergoing sex offender treatment, which included polygraph examinations related to his sexual attraction to, and deviant behavior with minors; (2) had written down the polygraph questions he had been asked; (3) was researching how to defeat polygraphs; (4) and recorded himself practicing his answers to polygraph questions" all as "relevant and probative of [Defendant's] state of mind at the time he committed the crimes charged." *Id.* at 2. Defendant contends that "any connection to the polygraph exams and the charged offenses is unsubstantiated and should thus not be admitted." Resp. 9, ECF No. 57-1.

"[T]estimony concerning a polygraph examination is admissible where it is not offered to prove the truth of the polygraph result, but instead is offered for a limited purpose such as rebutting a defendant's assertion that his confession was coerced." *United States v. Allard*, 464 F.3d 529, 534 (5th Cir. 2006). "[W]hile wholesale exclusion under rule 702 is unwarranted, there must be carefully constructed limitations placed upon the use of polygraph evidence in court[,]" and "the issue is within the sound discretion of the trial judge." *United States v. Piccinonna*, 885 F.2d 1529, 1534–35 (11th Cir. 1989). But "polygraph evidence should not be admitted, even for limited purposes, unless the trial court has determined that 'the probative value of the polygraph evidence outweighs the potential prejudice and time consumption involved in presenting such evidence.'"

10

*United States v. Miller*, 874 F.2d 1255 (9th Cir.1989) (*quoting Brown v. Darcy,* 783 F.2d 1389, 1397 n. 14 (9th Cir.1986)); *accord Piccinonna*, 885 F.2d at 1536.

Here, the Government does not seek to introduce polygraph evidence for its truth. Indeed the Government does not intend to introduce the results of the polygraph test at all. *See Allard*, 464 F.3d 529, 534 (5th Cir. 2006). Defendant's knowledge, intent, and identity at the time of the alleged crimes will likely be central to the trial, and the proffered evidence related to his polygraph examination and diligent preparation to deceive the polygraph examination are directly probative of his mental state and consciousness of guilt at the time the exam was administered—the same time as the charged offenses were presumable committed. *See Piccinonna*, 885 F.2d at 1536. Any risk of unfair prejudice may be cured by with a limiting instruction to not consider the evidence to draw any inferences about the results of the polygraph test itself. *See United States v. See Jones*, 210 F.3d 363 (4th Cir. 2000) ("Moreover, the statements did not involve the results of a polygraph test, or allow for an inference of the results of a polygraph test."). Accordingly, the evidence is admissible with the proper limiting instruction and insofar as it is not cumulative.

### E. Sex Offender Treatment Record/Statements

According to the Government's Notice, it intends to introduce at trial "[e]vidence of court-ordered sex offender treatment as a condition of [D]efendant's federal Bank Fraud conviction on April 13, 20071, and the records from that treatment from on or about November 2009 to October 2012, including statements by the defendant regarding sexual interests and arousal, prior allegations against him of sexual abuse of minor boys, an interest in pornography, a sexual interest and arousal by a '14 year old nephew,' maintenance polygraphs, immediately prior to and during the time period in count one[.]" *See* Not. 2, ¶ 7, ECF No. 28. The Court has already addressed and overruled Defendant's objections to the admission of this evidence. *See* Order, ECF No. 80; *see,*

11

*e.g., United States v. Durham*, 902 F.3d 1180 (10th Cir. 2018) (defendant's out-of-court statements that he had struggled with child pornography and homosexuality were intrinsic evidence in prosecution for traveling in foreign commerce and engaging in illicit sexual conduct with minor, and thus not subject to rule governing admissibility of "other crimes" evidence, where statements provided context regarding defendant's actions when confronted about victims' allegations.). Accordingly, the evidence is admissible with any proper limiting instruction and insofar as it is not cumulative.

### F. Other Instances of Sexual Abuse

According to the Government's Notice, it intends to introduce at trial "[e]vidence of the defendant sexually abusing of the following minor boys: (a) C.G.; (b) B.S.; (d) R.F.; and (e) S.D., covering a time period from 1983 to 1995." *See* Not. 2, ¶ 8, ECF No. 28. Defendant only objects to the evidence on Rule 403 grounds. *See* Resp. 9, ECF No. 57-1.

The Court concludes that, under Federal Rule of Evidence 414, the evidence is admissible as probative of Defendant's sexual interest in pubescent male children and helps demonstrate his intent and motive for each count and his propensity to sexually assault pubescent male children. *See, e.g., United States v. Bailes*, 665 F. App'x 340, 341–42 (5th Cir. 2016); *United States v. Furman*, 867 F.3d 981 (8th Cir. 2017). Evidence of a defendant's prior child molestation is admissible to show propensity in a prosecution for production of child pornography because the definition of child molestation includes attempted production of child pornography. *See* Fed. R. Evid. 414; *see, e.g., United States v. Hitt*, 473 F.3d 146, 159 (5th Cir. 2006); *United States v. Sullivan*, 751 F. App'x 799 (6th Cir. 2018). Accordingly, the evidence is admissible with any

proper limiting instruction and insofar as it is not cumulative or violative of Rule 403 in the context of trial.[5]

### G. Limiting Instructions and Ongoing Evaluation of Evidence under Rule 403

As discussed above, none of the evidence noticed by the Government is alone sufficient to trigger Rule 403 to exclude the evidence based on any danger unfair prejudice substantially outweighing the probative value, and any unfair prejudice would be mitigated by cautionary instruction and by Defendant's ability to cross-examine the relevant witnesses at trial. *See* Fed. R. Evid. 402, 403, 404(b), 413, 414; *see, e.g.*, *United States v. Crawley*, 533 F.3d 349, 355 (5th Cir. 2008); *Dillon*, 532 F.3d at 387 ("Evidence admissible under Rule 413 is still subject to the Rule 403 balancing test, so it may be excluded if its 'probative value is substantially outweighed by the danger of unfair prejudice.'"). Thus, there is no indication at this time that the jury will be distracted or confused or induced to decide the case on an improper basis. *See Dillon*, 532 F.3d at 389. Nor is there proof that the evidence will be so inflammatory as to divert unduly the jury's attention from the issues of the case, which involved graphic evidence as to the child-pornography images that Defendant allegedly possessed and distributed and evidence as to the conduct on the pornography Defendant allegedly produced. *See, e.g., United States v. Bailes*, 665 F. App'x 340, 342 (5th Cir. 2016).

---

[5] As outlined below, the Court declines to foreclose its Rule 403 analysis of other sexual abuse at this juncture. *See infra* Part II(G). But Defendant's "remoteness" argument without any relevant supporting case law is of no moment. *See United States v. Meacham*, 115 F.3d 1488, 1494-95 (10th Cir. 1997) (upholding the admission of 30 year old child molestation allegations under Rule 414); *United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001) (upholding the admission of 20 year old child molestation allegations under Rule 414). The Government shall not mention nor present evidence of these other instances until it obtains permission because this evidence is that of actual physical abuse, which can tend to present unfair prejudice concerns unlike the other evidence discussed herein. *See United States v. Beechum*, 585 F.2d 898, 914 (5th Cir. 1978) (Probity of the evidence as balanced against the potential for unfair prejudice is determined in light of the evidence admitted at trial.).

In child pornography cases, the evidence is by its nature inflammatory, creating friction with Rule 403. *See United States v. Caldwell*, 586 F.3d 338, 342–43 (5th Cir. 2009) (jurors should be prepared for graphic evidence of child pornography to "come[] together with the remaining evidence to form a narrative to gain momentum to support jurors' inferences regarding the defendant's guilt."); *see also Pace*, 10 F.3d at 1115–16 ("Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403."). But Rule 403 is "the exception, not the rule." *Id.*; *see also United States v. Naidoo*, 995 F.3d 367, 378 (5th Cir. 2021). Accordingly, at the pre-trial stage, the Court declines to foreclose its Rule 403 analysis today and will continue to monitor the unfair prejudice of each piece of evidence for any point it may substantially outweigh the probative value of that evidence throughout the trial, mindful of that the analysis shifts throughout trial in the context of other evidence that may prove the otherwise admissible evidence cumulative. *See United States v. Beechum*, 585 F.2d 898, 914 (5th Cir. 1978). Should the Court deem it warranted, it will issue a careful limitation or an appropriate instruction of the relevance of any evidence at trial. *See Naidoo*, 995 F.3d at 378.

**III.    Government's Motion in Limine Regarding Pre-Trial authentication of Evidence**

According to the Government, it has sought, but Defendant has declined, a stipulation to the authenticity of Exhibit 56—the Gateway desktop Western Digital hard drive forensic image and the Acer laptop computer Seagate hard drive forensic image. Mot. 2, ECF No. 84 (citing Fed. R. Evid. 902(14)). The Government contends that "[s]hould the two witnesses be required to testify regarding Exhibit 56, it would be simply to say that an exact copy of the hard drives was created and stored at the FBI's North Texas Regional Computer Forensic Lab which was then provided to an FBI Special Agent who then made an exact copy of both hard drives onto an external hard drive

labeled Exhibit 56 and provided that copy to the forensic analyst who processed and analyzed the copied data." Mot. 3, ECF No. 84. Defendant objects on two grounds: (1) lack of reasonable notice and (2) the need to confront the relevant witness. *See* Resp. 2, ECF No. 85. The Court finds neither argument persuasive.

    First, Defendant had reasonable notice of the Government's intent to offer hard drives recovered from the Acer and Gateway computers as evidenced by Defendant's motion to suppress the evidence on these hard drives, filed June 7, 2021. *See* Fed. R. Evid. 902(11); *see also* Mot. to Suppress, ECF No. 24. Second, it is undisputed that the Government provided Defendant with notice and the relevant certifications to extend self-authentication to the data copied from the Acer and Gateway hard drives. *See* Fed. R. Evid. 902(14) ("Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12)."). Thus, the Court deems the Acer and Gateway hard drives authentic.

    **SO ORDERED** on this **18th day** of **July, 2021.**

                                                                    _____
                                                                  Reed O'Connor
                                                                 **UNITED STATES DISTRICT JUDGE**